

U.S. Department of Justice

*United States Attorney*
*District of Maryland*
*Northern Division*

---

*Rod J. Rosenstein*
*United States Attorney*

*Rachel Miller Yasser*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4922*
*MAIN: 410-209-4800*
*FAX: 410-962-0716*
*TTY/TDD: 410-962-4462*

March 7, 2011

Jeffrey Risberg, Esq.
Federal Public Defenders Office
100 S. Charles Street
Baltimore, Maryland 21201

Re:  *United States v. Derwin Samuel Smith*, CCB 10-0583

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **4:30 p.m. on Monday, March 7, 2011**, it will be deemed withdrawn. The terms of the agreement are as follows:

## Offense of Conviction

[SECOND SUPERCEDING]

1. The Defendant agrees to plead guilty to Count Two of the Indictment now pending against him, which charges him with Interstate Transportation of a Minor With Intent to Engage in Prostitution in violation of 18 U.S.C. § 2423(a). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

## Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

   a. That the defendant knowingly transported an individual in interstate or foreign commerce;

Revised 11/5/09

b. That the defendant transported this individual with the intent that the individual engage in prostitution or any sexual activity for which any person can be charged with a criminal offense;

c. That the individual had not attained the age of 18 years at the time of transportation.

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: a mandatory minimum sentence of ten (10) years imprisonment up to a maximum of life imprisonment; a mandatory minimum term of supervised release of five (5) years up to a maximum term of lifetime supervised release; and a maximum fine of $250,000. In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

4. The Defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

5. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he/she wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised.

## Factual and Advisory Guidelines Stipulation

7. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

    a. Pursuant to U.S.S.G. § 2G1.3(a)(3), the base offense level is twenty-eight (28) because the offense of conviction is 18 U.S.C. § 2423(a);

    b. Pursuant to U.S.S.G. § 2G1.3(b)(2), the base offense level is increased by two (2) levels because the defendant unduly influenced a minor to engage in prohibited sexual conduct (subtotal = thirty (30));

    c. Pursuant to U.S.S.G. § 2G1.3(b)(4), the offense level is further increased by two (2) levels because the offense involved a commercial sex act (subtotal = thirty-two (32));

    d. Pursuant to U.S.S.G. § 3A1.1(b)(1), the offense level is further increased by two (2) levels because the defendant knew or should have know that a victim of the offense was a vulnerable victim (subtotal = thirty-four (34));

    e. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. However, this Office will not make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level reduction. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

**Total offense level = Thirty-two (32).**

8. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from

which he derived a substantial portion of his income.

9. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Plea Terms Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)

10. The parties stipulate and agree that, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), a sentence of 121 months in the custody of the Bureau of Prisons. This agreement does not affect the Court's discretion to impose any lawful fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea agreement pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A).

11. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Obligations of the United States Attorney's Office

12. At the time of sentencing, this Office will recommend a sentence of imprisonment 121 months, to be followed by a term of supervised release between five (5) years and life. At the time of sentencing, this Office will move to dismiss the open count against the Defendant.

### Waiver of Appeal (Rule 11(c)(1)(C))

13. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal his conviction. Both the Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal a sentence of 121 months imprisonment and a term of supervised release between five (5) years and life, as well as any order of forfeiture, agreed to in this case as well as whatever fine or order of restitution that may be imposed and any issues that relate to the establishment of the advisory guidelines range. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency. If Defendant files a notice of appeal, notwithstanding this agreement, Defendant agrees that this case shall be remanded to the district court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

14. The Defendant may withdraw from the agreement if the Court wishes to impose a sentence in excess of 121 months and the government may withdraw if the Court wishes

to impose a sentence below 121 months. In the event that the Court rejects the plea, but neither side wishes to withdraw from the agreement, then nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision.

15. If the Defendant's guilty plea is rejected, withdrawn, vacated, or reversed by any court in a later proceeding, the government will be free to prosecute the Defendant for all charges as to which it has knowledge, and any charges that have been dismissed because of this plea agreement will be automatically reinstated. In such event, the Defendant waives any objections, motions, or defenses based upon the Speedy Trial Act or the Sixth Amendment to the Constitution as to the delay occasioned by the later proceedings.

16. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

17. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

18. The Defendant expressly understands that the Court is not a party to this agreement. The Defendant understands that the Court is under no obligation to accept this plea offer made pursuant to Rule 11(c)(1)(C). The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

19. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Rachel Miller Yasser
Tonya Kelly Kowitz
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3/7/11
Date                                  Derwin Samuel Smith

I am Mr. Smith's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

3/7/11
Date                                  Jeffrey Risberg, Esq.

# ATTACHMENT A-STATEMENT OF FACTS

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The defendant, Derwin Samuel Smith ("SMITH") age 42, is a resident of Anne Arundel County, Maryland.

On Monday, June 7, 2010 at approximately 7:30 p.m., members of the Maryland Human Trafficking Task Force recovered a 12-year-old female from motel Room 319 located at the Knights Inn on Route 198 in Anne Arundel County, Maryland. The minor female had been reported missing from the Washington, D.C. area since on or about May 26, 2010, and was believed to be engaged in prostitution. After the minor called a relative from an unknown Maryland number earlier on June 7, 2010, officers identified the phone number as one associated with the Knight's Inn and responded to the motel. It was determined, based on a review of hotel phone records, that the minor had placed the call from Room 319.

Investigation further revealed that Room 319 was registered to defendant SMITH. According to motel registration records, the defendant checked into the motel earlier that day at approximately 7:00 a.m. The motel maintained a copy of the defendant's Maryland driver's license identification card, and provided a copy of the registration records and the defendant's driver's license to law enforcement.

When detectives knocked on the door to Room 319, the minor female answered undressed. After allowing her to get dressed, the minor explained that she had just got out of the bath and was waiting for "Damion" to come back so that they could have sex. The minor stated that "Damion" told her that he would be back between eight and ten that evening and had instructed her to be cleaned up and ready to have sex. Located in the room with the minor was a condom and a bottle of KY lubricating gel, as well as a pair of men's shorts. The victim viewed the copy of the defendant's driver's license and identified the defendant as "Damion."

The minor was transported back to police headquarters and further identified the defendant as someone who had picked her up on the street in Washington, DC, paid for sexual services performed in the backseat of his car, and recruited her to work for him as a prostitute. The minor stated that she agreed, and that the defendant transported to Atlantic, City New Jersey over the weekend to work for him as a prostitute. The 12-year old girl stated that, while in Atlantic City, she performed multiple commercial sex acts with adult males at the behest of the defendant, and that she provided all of the money earned to defendant SMITH.

In the meantime, officers stationed themselves around the area of the motel and in the motel room where the minor was recovered. At approximately 9:13 p.m., Anne Arundel County Sergeant Steven McBee, who was located inside the motel room, saw a shadow outside of motel room 319. He opened the door to further investigate, along with Special Agent Michael Mizer, and saw a black male standing outside of the motel room. The individual– later identified as

defendant SMITH– was asked for his name, identification, and reason for being there, and the defendant gave a false name and stated that he had no identification on him. The defendant further stated that he was there looking for a friend. Defendant SMITH was asked why he didn't just go to the front desk, and the defendant stated that he had rented a room for a homeless girl who he takes care of. He was asked where his car was located, and the defendant stated that he was dropped off by a friend.

SA Mizer compared the photocopy of the defendant's driver's license obtained from the motel registration records and concluded that the individual standing before him was in fact DERWIN SMITH, the room registrant. The defendant was placed under arrest and a search incident to arrest revealed a Maryland driver's license identification in the name of Derwin Smith and a key to motel room 319 in the defendant's wallet. A cell phone was also recovered from the defendant's person. Cell site analysis from the defendant's phone revealed that the defendant's phone was pinging off of cell towers in Atlantic City, New Jersey, in the days prior to his arrest. The defendant's car, a red 1990 Volvo station wagon, was later located parked across the street from the motel.

The defendant was transported to the Western District Police Station located in Odenton, Maryland. He was read *Miranda* warnings and, after waiving his rights both orally and in writing by initialing a *Waiver of Rights* form, agreed to speak with law enforcement. During the interview, the defendant made several incriminating statements, including admitting that, at approximately 11:30 p.m. on Friday evening, he picked up the victim off the street in Washington, DC. He admitted that he took her to Atlantic City, New Jersey, over the weekend, and that he purchased the Knight's Inn motel room for her on Monday morning. He also admitted to purchasing clothing for her upon their arrival in Maryland. He stated that he returned to the motel at approximately 9:00 pm to check on the girl when she did not answer the phone. He denied knowing that she was 12-years-old. He stated he believed she was a 22-year-old prostitute from Barbados, who he knew only as "baby," but denied having sex with her.

Subsequent to the defendant's interview, a search warrant was obtained for 10 McGuirk Drive in Glen Burnie, Maryland, the address the defendant provided as his own. Before execution of the search warrant, it was discovered that there were new occupants in the house that had been living there for the past two weeks and did not know the defendant. It was later discovered that the defendant and his wife were staying at a nearby Royal Inn motel.

A search warrant was also obtained for the 1990 Volvo SW. Suspected semen was recovered from the backseat of the vehicle, where the minor stated that she engaged in sexual intercourse with the defendant. DNA from the suspected semen was compared to DNA from the defendant, and it was determined to be a match. It was also determined that the minor's DNA was present in the backseat of the car.

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

3/7/11
Date

*[signature]*
Derwin Samuel Smith